IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RHONDA LAINE WILLIAMS,**   } | |
| } | |
| **Plaintiff,**   } | |
| } | |
| v.   } | |
| } | **Case No. 2:14-cv-01760-RDP** |
| **CAROLYN W. COLVIN,**   } | |
| **Acting Commissioner of Social Security**   } | |
| } | |
| } | |
| **Defendant.**   } | |

## MEMORANDUM OF DECISION

Plaintiff Rhonda Laine Williams brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed her applications for disability, DIB, and SSI on March 3, 2011 in which she alleged that disability began December 1, 2010. (R. 165-74). Plaintiff's applications were initially denied by the Social Security Administration on June 24, 2011. (R. 70). Plaintiff then requested a hearing before an Administrative Law Judge. Plaintiff's request was granted and a hearing was held before Administrative Law Judge Paul W. Johnson ("ALJ") on January 7, 2013. (R. 28-65).

The ALJ's decision, dated January 29, 2013, found that Plaintiff had not been under a disability within the meaning of the Act since the date of her alleged onset date. (R. 22). *See* 20

C.F.R. §§ 404.1520(g), 416.920(g).  The ALJ found that Plaintiff had the following severe impairments: (1) Status Post Remote Subacute Infarcts of the Right Brain; (2) Hypertension; (3) Major Depression; (4) Cluster B Personality Features; (5) Alcohol dependence, in remission; and (6) Iron and B-Vitamin Deficiency, Status Post Gastric Bypass.  (R. 14).  However, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 15-16).

Plaintiff appealed the ALJ's decision to the Appeals Council.  (R. 6).  The Appeals Council denied Plaintiff's request for review, thereby making the decision the final decision of the Commissioner and a proper subject of this court's appellate review.  (R. 1).

**II.    Facts**

Plaintiff was 42 years old at the time of the hearing.  (R. 57).  Plaintiff testified that she had completed high school and had taken some college courses.  (R. 58).  Plaintiff's work history includes employment in the service industry and clerical work in the trucking industry.  (R. 211-18).  In the service industry, Plaintiff worked as a waitress, cook, and bartender.  (R. 211).  In the trucking industry, Plaintiff calculated fuel taxes, prepared logs and reports, and entered mileage records. (R. 215-17).  Plaintiff alleges she has difficulty concentrating and states that she can no longer carry out her previous employment duties.  (R. 218).

Plaintiff contends that her disability began on December 1, 2010, and was caused by (1) mental problems and (2) a stroke which lead to numbness in her left hand.  (R. 165, 169, 202).  In addition to her mental issues, Plaintiff also complains of constant headaches, alleged to be a result of her stroke.  (R. 37, 387, 392, 404).  During the hearing, Plaintiff testified she had had a headache for nine months straight.  (R. 37).  Plaintiff further testified that her headaches would

sometimes be so severe as to prevent her from getting out of bed, and that she would typically be bedridden four out of five days. (R. 42, 43).

Plaintiff was diagnosed with morbid obesity in early 2004 and underwent gastric bypass surgery on February 4, 2004. (R. 267-70). Dr. Clifford Black performed the gastric bypass procedure. (R. 267). In addition to morbid obesity, Dr. Black also diagnosed Plaintiff with depression and hypertension. (R. 268).

Plaintiff was admitted to Stringfellow Memorial Hospital ("SMH") in May 2008 for suicidal thoughts and anemia. She was treated by Dr. Lloyd James. (R. 307-314). Dr. James noted that Plaintiff has experienced chronic iron deficiency since the date of her gastric bypass surgery and had been noncompliant with seeing a physician for the past several years. (R. 307). Dr. James further noted that Plaintiff had previously taken Celexa for depression, but was unable to determine why Plaintiff had stopped taking the medication. (R. 307-08). Upon discharge from SMH on May 12, 2008, Plaintiff was prescribed iron sulfate, Bactrim, Cardizem, Lortab, Celexa, and Diflucan. (*Id.*). Plaintiff was again admitted to SMH in June 2008 following complaints of generalized weakness. (R. 287). At SMH, it was determined that Plaintiff's symptoms were exacerbated by anemia. (*Id.*).

Plaintiff was treated at the Cheaha Mental Health Center ("CMHC") from February 2008 to March 2010. (R. 380-83). Plaintiff was diagnosed with major depressive disorder, alcohol dependence, and a personality disorder. (R. 383). Plaintiff was assessed a Global Assessment of Functioning ("GAF") score of 50 by CMHC. (*Id.*). While at CMHC, the goals of Plaintiff's treatment were to decrease and control her symptoms of depression. (*Id.*). CMHC noted that a barrier to achieving this goal was Plaintiff's history of non-compliance with treatment. (*Id.*).

Plaintiff was admitted to Citizens Baptist Medical Center ("CBMC") on December 20, 2010, where she complained of a headache that had lasted for three months. (R. 387). The clinical impression was that Plaintiff had experienced subacute infarcts. (R. 388). CBMC noted Plaintiff's history of unilateral and extremity numbness. (R. 389). Plaintiff had a CT scan performed while at CBMC, which found evidence of remote infarctions. (R. 392). The CT scan further found no convincing evidence of acute intracranial process. (R. 392).

Dr. Renee Myers, a psychological consultative examiner, conducted an evaluation of Plaintiff on May 20, 2011. (R. 397-400). Dr. Myers' assessment included: (1) major depression, recurrent; (2) cluster B personality features; and (3) a GAF score of 60. (R. 400). However, Dr. Myers concluded that Plaintiff had been able to work despite these issues in the past, and concluded her left hand was the primary factor affecting her ability to work. (R. 400).

Dr. Ledet, a physical consultative examiner for the Alabama disability office, found that Plaintiff was positive for a previous history of stroke during an examination dated May 21, 2011. (R. 402-04). Additionally, Dr. Ledet noted that Plaintiff's left-hand grip strength was weaker than her right hand, measuring at 3/5. (R. 405). As indicated in a Disability Report, Plaintiff reported that the issue with her hand had progressively gotten worse over time, and claimed that she "can't hold anything anymore." (R. 235).

Dr. Robert Heilpern conducted a physical residual functional capacity ("RFC") assessment of Plaintiff on June 24, 2011. (R. 424-31). Dr. Heilpern's primary diagnosis was remote subacute infarcts of the right brain, with a secondary diagnosis of hypertension. (R. 424). Dr. Heilpern found that Plaintiff could sit or stand for six hours in a typical workday. (R. 425). Dr. Heilpern concluded that Plaintiff's allegations of problems with lifting, completing tasks, and using her hands were only partially credible. (R. 429). But Dr. Heilpern noted that Plaintiff's

limitations prevented her from ever climbing a ladder and that she should only occasionally be required to crawl.  (R. 426).  Dr. Heilpern further noted that Plaintiff was limited in gross manipulation and fine manipulation with her hands, but was only limited with her left hand.  (R. 427).  Plaintiff's grip strength was measured at 5/5 with her right hand, and 3/5 with her left hand.  (R. 427).  Dr. Heilpern noted that Plaintiff had difficulty picking up small objects and buttoning garments with her left hand, but reported that sensation was intact.  (R. 427).

Dr. Robert Estock conducted a mental RFC assessment on Plaintiff the same day.  (R. 432-35).  Dr. Estock evaluated Plaintiff in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  Dr. Estock concluded that Plaintiff had moderate limitations in ten out of twenty mental activities. (R. 432-33).  Dr. Estock further concluded that Plaintiff had no significant limitations in the other ten mental activities.  (R. 432-33).  Dr. Estock's functional capacity assessment was that Plaintiff could understand and remember simple instructions, and could attend and concentrate on simple tasks for two hour periods during a regular work day.  (R. 434).   Dr. Estock noted that Plaintiff may miss one to two days per month due to symptoms of major depressive disorder, could have casual contact with the public, and that workplace changes should be infrequent and gradually introduced.  (R. 434).

Plaintiff was hospitalized again at SMH in September 2012.  She presented with chest pain and headaches as her main complaints.  (R. 468).  Plaintiff was diagnosed with anemia.  (R. 468).  The physician who evaluated Plaintiff, Dr. Muzamil Babiker, concluded that Plaintiff's anemia was most likely caused by her previous gastric bypass surgery.  (R. 471).  Plaintiff had a CT scan performed while hospitalized at SMH, with findings consistent with old strokes.  (R. 468).  Plaintiff also had an MRI and MRA performed, with findings that were fairly

unremarkable. (R. 468). Dr. Babiker noted that Plaintiff was not taking any medication at the time of hospitalization. (R. 468). The discharge diagnoses included persistent headache, a history of cerebrovascular accident, hypertension, and deficiencies in iron and vitamin B12. (R. 468). Upon discharge, Plaintiff received prescriptions for B12 pills, iron, blood pressure medication, and Fioricet for her headaches. (R. 468).

In treatment notes from Plaintiff's September 2012 hospitalization at SMH, Dr. Babiker noted that Plaintiff resided in rehabilitation. (R. 468). Plaintiff stated during the hearing that the Fioricet was effective at treating her headaches, but that she had not taken the medication while in rehab because the facility prohibited its usage. (R. 44-45). Plaintiff indicated that she would be willing to continue treatment of her headaches with Fioricet after she was released from the rehab facility. (R. 44, 45).

During the hearing, Dr. Michael McClanahan testified as the vocational expert ("VE"). (R. 55-64). The VE classified Plaintiff's past work as server, short order cook, payroll clerk, and receptionist. (R. 56-57). The VE stated that Plaintiff would be unable to find employment in her former capacity in those four job areas. (R. 58). However, the VE testified that there would be other jobs available to Plaintiff, which included employment as a stock checker, bakery worker, or hand presser. (R. 58-61). Thus, while finding that Plaintiff would not be able to engage in her past relevant work, the ALJ found that there were significant numbers of jobs available that Plaintiff would be able to perform. (R. 20-21). Based on this testimony, the ALJ concluded that Plaintiff was not disabled because she would be able to successfully find work in other areas of employment. (R. 21).

### III.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.

20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the

ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

### IV.     Plaintiff's Argument for Reversal

Plaintiff presents one argument in support of reversing the decision of the ALJ in denying disability. (Pl.'s Mem. at 5-11). She contends that the ALJ committed reversible error by failing to properly consider her symptoms according to the requirements of the Eleventh Circuit's three-part pain standard. (Pl.'s Mem. at 5-11).

### V.      Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239)(other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See*

*Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## VI.    Discussion

Plaintiff argues that the ALJ committed reversible error by failing to apply the three-part pain standard as required by the Eleventh Circuit.[1]  (Pl.'s Mem. at 5-11).  Plaintiff claims that the ALJ erred by failing to "consider and develop the evidence of record."  (Pl.'s Mem. 9).  It is Plaintiff's position that she should have been found disabled based on her documented medical symptoms, and that the decision of the Commissioner is not based upon substantial evidence.  (Pl.'s Mem. 10).  Plaintiff requests that this court reverse the ALJ's decision and grant her benefits.  In the alternative, Plaintiff requests her case be remanded to the ALJ for consideration of the record, which was bolstered by additional evidence.  (Pl.'s Mem. 11).

The Eleventh Circuit requires that the above mentioned three-part pain standard be applied where a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms.  *Holt v. Sullivan*, 921 F.2d. 1221, 1223 (11th Cir. 1991).  The first requirement of the test is that evidence of an underlying medical condition exists.  *Id.* at 1223.  Following this step, the next requirements can be interchanged.  *Id.*  A claimant must either establish that there is objective medical evidence confirming the severity of the alleged pain from that condition or that there is an objectively determined medical condition of such severity that it can reasonably be expected to cause the alleged pain.  *Id.*

---

[1] Plaintiff bolsters her argument with Social Security Ruling 96-7p.  (Pl.'s Mem. at 5).  This ruling requires that an ALJ first consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms.  The ALJ must next evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.

There are only two questions that this court must answer in connection with this issue: whether the decision of the Commissioner is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). After careful review of the record and the briefs submitted by the parties, the court finds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

In applying for benefits from the Social Security Administration, the burden falls upon a claimant to prove disability. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The ALJ found that Plaintiff suffers from several severe impairments, but that her impairments, considered singly and in combination, do not meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14, 15). The ALJ outlined the two-step process required to consider Plaintiff's symptoms. (R. 17). The first step was to determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or symptoms; the next step was to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit her functioning. (R. 17).

Plaintiff contends that the pain standard does not require objective proof of the pain itself. (Pl.'s Mem. 6). "While both the regulations and the [three-part pain standard] require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir. 1991). The court agrees but that does not fully address what an ALJ is required to determine. A claimant must also provide "objective medical evidence of a condition

that could reasonably be expected to cause the pain alleged . . . ." *Id.*  In other words, Plaintiff must put forward sufficient evidence that the alleged condition could cause the pain at issue.

An ALJ is not required to explicitly articulate the pain standard; it is enough if the language of the ALJ's opinion indicates that the standard was applied. *Davis v. Barnhart*, 153 Fed. Appx. 569, 572 (11th Cir. 2005) (stating that an ALJ's statement may indicate the application of the pain standard where not explicitly mentioned).  Of course, when an ALJ discredits a claimant's testimony, he must sufficiently articulate the reasons for doing so, supported by substantial evidence. *Id.*

In this case, the ALJ found that the medical evidence did not support Plaintiff's alleged limitations with her left hand and the severity of other impairments. (R. 17).  Furthermore, the ALJ found that Plaintiff's allegations were not credible to the extent they were inconsistent with her RFC. (R. 19).  The court agrees.  Dr. Heilpern's physical RFC assessment found that Plaintiff's alleged problems with lifting, completing her tasks, and using her hands were partially credible. (R. 429).  Dr. Heilpern noted that a physical examination of Plaintiff in December 2010 found normal neurological signs and that Plaintiff had a full range of motion in her extremities. (*Id.*).  Dr. Heilpern further noted that a consultative examination of Plaintiff in May 2011 had normal findings with the exception of a decrease in grip strength in Plaintiff's left hand. (*Id.*).  Dr. Estock's mental RFC assessment similarly found that Plaintiff was not significantly limited in ten evaluated mental activities, finding that Plaintiff could understand, remember, and carry out simple instructions. (R. 434).

Plaintiff alleged that the limitations involving her left hand had worsened to the point of total paralysis of the hand. (R. 33).  But to the contrary, Plaintiff had a CT scan performed at Citizens Baptist Medical Center in December 2010, and that CT scan found remote infarction

changes, but no convincing evidence for acute intracranial process. (R. 392). The ALJ also noted that Plaintiff testified at the hearing that she had participated in chores while a resident at the rehabilitation center, such as cleaning, cooking, and making her bed. (R. 40-41).

To be sure, the examination by Dr. Johnathan Ledet revealed that Plaintiff did have some difficulties using her left hand. (R. 405). Dr. Ledet's examination, conducted May 21, 2011, found that Plaintiff's left hand grip strength had been decreased to 3/5. (R. 405). Dr. Ledet also noted that Plaintiff's right hand was the dominant extremity. (R. 406). The medical evidence shows that Plaintiff was treated for headache at Stringfellow Hospital. (R. 468). While at Stringfellow, Plaintiff had a CT scan, MRI, and a MRA of her head completed. (R. 518-20). Neither the CT scan nor the MRI revealed an acute intracranial finding, only showing signs of a past stroke. (R. 518, 519). The results of the MRA were reported as "otherwise unremarkable." (R. 520).

Plaintiff also argues that the ALJ did not consider her history of depression. (Pl.'s Mem. 7). However, the ALJ relied upon the findings of a psychological consultative examiner, Dr. Renee Myers, who found that Plaintiff did indeed suffer from depression. (R. 18, 20, 397-400). In addition, Dr. Myers noted that Plaintiff had worked in spite of these limitations in the past, stating that "[Plaintiff's] problems with her hand are the primary limiting factor for current employment." (R. 400). The ALJ also noted that Plaintiff was not then undergoing therapy or counseling for her depressive symptoms. (R. 19). Plaintiff testified at the hearing that the medication was effective in treating the symptoms she complains of. (R. 39, 44).

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this

determination.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

    **DONE** and **ORDERED** this January 6, 2016.

                                                    **R. DAVID PROCTOR**
                                                    UNITED STATES DISTRICT JUDGE